UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                               )

SONAL BOSE, Individually, on Behalf of Herself and   )
All Others Similarly Situated,                    )

                              )  10 Civ. 9183 (DAB)

            Plaintiffs,         )

                              )

            v.                )

                              )  **ORAL ARGUMENT REQUESTED**

INTERCLICK, INC.; MCDONALD'S USA, LLC;      )
MCDONALD'S CORPORATION;             )
CBS CORPORATION; MAZDA MOTOR OF      )
AMERICA, INC.; MICROSOFT              )
CORPORATION; and DOES 1-50,          )

                              )

           Defendants.        )

                              )
------------------------------------------------------------------- X


# INTERCLICK, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS
## THE AMENDED COMPLAINT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ALLEGATIONS OF THE AMENDED COMPLAINT ...................................................... 4

    Internet Advertising and Ad Networks ....................................................................... 5

    Browser Cookies .......................................................................................................... 5

    Flash Cookies ............................................................................................................... 6

    "Browser Sniffing" ....................................................................................................... 6

    Plaintiff's "Experience" With Flash Cookies and "Browser Sniffing" ...................... 7

ARGUMENT ...................................................................................................................... 8

MOTION TO DISMISS STANDARD ............................................................................... 8

POINT I    PLAINTIFF FAILS TO ALLEGE A VIOLATION OF THE COMPUTER
            FRAUD AND ABUSE ACT. ...................................................................... 9

    A.    Plaintiff Fails To Allege The Requisite $5,000 In Actual Damages .......................... 10

    B.    Plaintiff May Not Aggregate "Damages" From Alleged Acts Against
          Unnamed Putative Class Members To Satisfy The Statutory Requirement For
          $5,000 In Actual Damages .......................................................................................... 14

POINT II    THE COURT SHOULD DISMISS PLAINTIFF'S STATE LAW CLAIMS
            FOR LACK OF JURISDICTION. ............................................................. 15

POINT III  PLAINTIFF FAILS TO ALLEGE ANY NEW YORK STATE LAW
            CLAIM. ....................................................................................................... 17

    A.    Plaintiff Fails To Allege A Claim Under N.Y. General Business Law
          Section 349 .................................................................................................................. 17

    B.    Plaintiff Fails To Allege A Claim For Trespass To Personal Property/Chattels ........ 19

    C.    Plaintiff Fails To Allege A Claim For Breach Of Implied Contract .......................... 22

    D.    Plaintiff Fails To Allege A Claim For Tortious Interference With Contract .............. 23

CONCLUSION ................................................................................................................... 24

# TABLE OF AUTHORITIES

## Federal Cases

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) .................................................................................... *passim*

*AtPac v. Aptitude Solutions,*
    730 F. Supp. 2d 1174 (E.D. Cal. 2010) ............................................................... 12

*Bell Atl. Cor. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................... *passim*

*Blockbuster v. Galeno,*
    472 F.3d 53 (2d. Cir. 2008) ................................................................................. 16

*Carnegie-Mellon Univ. v. Cohill,*
    484 U.S. 343 (1988) ............................................................................................. 16

*Czech v. Wall Street on Demand, Inc.,*
    674 F. Supp. 2d 1102 (D. Minn. 2009) ............................................................... 3, 11

*Elektra Entertainment Group, Inc. v. Santangelo,*
    No. 06 Civ. 11520, 2008 WL 4452393 (S.D.N.Y. Oct. 1, 2008) ........................... 21

*In re DoubleClick Privacy Litigation,*
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................................ *passim*

*In re JetBlue Airways Corp. Privacy Litig.,*
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) .............................................. 13, 17, 19, 21, 22

*Mid-Hudson Catskill Rural Migrant Ministry, Inc.,*
    418 F.3d 168 (2d Cir. 2005) ................................................................................. 22

*Nomination Di Antonio E Paolo Gensini, S.N.C. v. H.E.R. Accessories Ltd.,*
    No. 07 Civ. 6959 (DAB), 2010 WL 4968072 (S.D.N.Y. Dec. 6, 2010) ................... 9

*Océ North America, Inc. v. MCS Services, Inc.,*
    No. WMN-10-CV-984, 2010 WL 3703277 (D. Md. Sept. 16, 2010) ..................... 10

*Register.com. Inc. v. Verio, Inc.,*
    356 F.3d 393 (2d Cir. 2004) ............................................................................. 10, 19

*Thurmond v. Compaq Comp. Corp.,*
    171 F. Supp. 2d 667 (E.D. Tex. 2001) ................................................................. 14

*Worldspan, L.P. v. Orbitz, LLC,*
    No. 05-C-5386, 2006 WL 1069128 (N.D. Ill. April 19, 2006) ............................... 11

*W.R. Huff Asset Mgt. Co. v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008) ............................................................. 15

**State Cases**

*Foster v. Churchill*,
   87 N.Y.2d 744 (1996) ..................................................................... 23

*Gale v. International Business Machines Corp.*,
   9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dep't 2004) ................................ 18

*Goshen v. Mutual Life Ins. Co.*,
   98 N.Y.2d 314 (2002) ..................................................................... 18

*Hecht v. Components Int'l, Inc.*,
   22 Misc. 3d 360, 867 N.Y.S.2d 889 (Sup. Ct. Nassau County 2008) ...... 20

*Intel Corp. v. Hamadi*,
   30 Cal. 4th 1342 (2003) .................................................................. 19

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y.2d 20 (1995) ................................................................. 17, 18

*School of Visual Arts v. Kuprewicz*,
   3 Misc. 3d 278, 771 N.Y.S.2d 804 (N.Y. Sup. Ct. 2003) ..................... 19

*Solomon v. Bell Atlantic Corp.*,
   9 A.D.3d 49, 777 N.Y.S.2d 50 (1st Dep't 2004) ................................ 18

*Stutman v. Chemical Bank*,
   95 N.Y.2d 24 (2000) ................................................................. 17, 19

**Federal Statutes**

Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*, .............................. *passim*

Class Action Fairness Act, 28 U.S.C. § 1332(d) ........................................ 4, 16, 17

28 U.S.C. § 1367(c)(3) ..................................................................... 15

**State Statutes**

N.Y. General Business Law § 349 ................................................... 17, 18, 19

**Rules**

Rule 12(b)(6), Federal Rules of Civil Procedure ...................................... *passim*

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint should be dismissed with prejudice because, among other reasons, Plaintiff is unable to allege any cognizable injury and therefore fails to meet either the $5,000 threshold to state a claim under the Computer Fraud and Abuse Act — her sole remaining federal claim — or the $5,000,000 jurisdictional amount to justify federal jurisdiction over her state law claims under the Class Action Fairness Act.

Defendant interclick, Inc. ("interclick") previously moved to dismiss plaintiff Sonal Bose's ("Plaintiff's") original Complaint because Plaintiff's conclusory allegations failed to plead facts sufficient to state any cognizable claim or injury.  In making that motion, interclick relied upon a decision of Judge Buchwald of this Court dismissing a group of consolidated putative class actions that, like this action, challenged an Internet advertiser's alleged use of technology that tracked browsing on the Internet.  In that detailed and authoritative decision, the court dismissed plaintiffs' complaint (including claims under the very federal statutes at issue in Plaintiff's original Complaint) with prejudice because plaintiff's "bare assertion[s]" and "implausible" theories failed to create a colorable claim.  *In re DoubleClick Inc. Privacy Litigation* ("*DoubleClick*"), 154 F. Supp. 2d 497, 510 (S.D.N.Y. 2001).

Instead of opposing interclick's motion to dismiss, Plaintiff conceded the validity of the motion, filing an Amended Complaint in an effort to forestall dismissal.  Plaintiff abandons one of her two federal claims (the Federal Wiretap Act claim), leaving only her claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq.*, as a basis for federal question jurisdiction.  Plaintiff's revised pleading nonetheless fails to supply the factual allegations necessary to state a cognizable claim, as required by *DoubleClick* and by the subsequent decisions by the United States Supreme Court in the *Twombly* and *Iqbal* cases articulating the requirement to plead *facts* setting forth a *plausible* basis for relief.  To the

contrary, Plaintiff largely relies upon the same conclusory allegations set forth in her original Complaint.  The additional allegations made in the Amended Complaint similarly do not rise above the level of pure conclusion and speculation, and thus cannot save Plaintiff's remaining claims.[1]

The gravamen of the Amended Complaint, like the original Complaint, is that Plaintiff may have been subject to Web advertising practices by interclick of which Plaintiff was unaware.  The only result of the alleged practices is that, at most, Plaintiff might have been shown an advertisement relevant to websites she previously visited (such as a travel-related advertisement if she had visited a travel-related website) — a result that Plaintiff implicitly concedes caused no injury or damage.  Nothing in the Amended Complaint identifies any cognizable injury to Plaintiff as a result of interclick's alleged activities.  This pleading deficiency is fatal to all of Plaintiff's claims.

Plaintiff's sole remaining federal claim — under the CFAA — may only be asserted where a plaintiff has suffered economic damages of at least $5,000 as a result of a single act of unauthorized access (for example, from identity theft).  18 U.S.C. § 1030; *DoubleClick*, 154 F. Supp. 2d at 519-20.  Plaintiff's Amended Complaint fails to state a cognizable claim under the CFAA because Plaintiff's conclusory allegations of damage cannot satisfy the CFAA's $5,000 threshold requirement.

---

[1]  In the Amended Complaint, Plaintiff has added as defendants alleged advertisers McDonald's USA, LLC (and its corporate parent McDonald's Corporation), CBS Corporation, Mazda Motor Of America, Inc. and Microsoft Corporation (the alleged "Advertiser Defendants").  Plaintiff had filed a separate suit in this Court against the Advertiser Defendants other than McDonald's USA, LLC (*Bose v. McDonald's Corporation, et al.*, Case No. 10 Civ. 9569 (DAB)), but has now abandoned that separate lawsuit and stated an intention to dismiss it without prejudice, though Plaintiff has not yet done so.  Plaintiff's allegations fail to establish any nexus whatsoever between herself and the Advertiser Defendants, and, concurrently with this motion, the Advertiser Defendants are filing a motion to dismiss Plaintiff's Amended Complaint, in which they have joined in the arguments made in this motion and made additional arguments.

Plaintiff alleges no facts (as opposed to mere labels and conclusions) suggesting that interclick's alleged use of tracking technology caused a single cent of economic damage to Plaintiff, let alone sufficient damage to reach the $5,000 statutory threshold.  Plaintiff does not even claim that she has suffered $5,000 in economic damages, and any such claim would be implausible given her *de minimis* factual allegations.  Plaintiff alleges that one of the forms of technology used by interclick *may* have utilized a tiny part of the storage capacity of her computer, but the mere alleged unauthorized utilization of a portion of the capacity of an electronic device is not sufficient to state a claim under the CFAA, absent factual allegations that the capacity utilized was significant, and actually did cause a slowdown or shutdown of the device.  *See, e.g.*, *Czech v. Wall Street on Demand, Inc.*, 674 F. Supp. 2d 1102, 1116-18 (D. Minn. 2009).  Plaintiff does not and cannot make such allegations.

In another strained attempt to plead injury, Plaintiff claims that interclick's alleged tracking technology may have acquired information about Plaintiff's web browsing habits, and that this information has economic value for which Plaintiff should be compensated.  This allegation fails to plead injury under the CFAA both because it is completely speculative and because, as Judge Buchwald held in *DoubleClick*, the gathering of information about a consumer using tracking technology is not "damage" cognizable under the CFAA.  154 F. Supp. 2d at 524.

To the extent Plaintiff attempts to rely on damage to other people and their computers, Plaintiff lacks standing to raise other people's damage and fails to plead facts alleging any such damage.  Even beyond these fundamental deficiencies, the claim fails as a matter of law.  In *DoubleClick*, in dismissing the CFAA challenge to tracking technology for failure to satisfy the $5,000 economic damages threshold, Judge Buchwald rejected the notion that DoubleClick's placing and accessing of tracking software on *different* computers could plausibly be considered

a "single act" for purposes of meeting the statutory threshold.  154 F. Supp. 2d at 524.  Here, too, interclick's alleged use of tracking technologies as to different computers cannot plausibly be alleged to constitute a "single act."  Accordingly, as in *DoubleClick*, Plaintiff's amended CFAA claim should be dismissed with prejudice.

Without a viable federal claim, the Amended Complaint also pleads a variety of state law claims.  The Court should decline to exercise supplemental jurisdiction over these claims.  Implicitly recognizing that her sole remaining federal law claim hangs by a thread, Plaintiff now alleges in her Amended Complaint a new basis for jurisdiction over her state law claims — the Class Action Fairness Act of 2005 ("CAFA").  As Plaintiff recognizes, however, CAFA jurisdiction only applies if, among other things, the aggregate claims of the Plaintiff and all putative class members exceed the sum or value of $5,000,000, exclusive of interest and costs. Plaintiff completely fails to meet her burden of pleading sufficient facts to establish a "reasonable probability" that the aggregate claims of the alleged plaintiff class are in excess of $5 million.  Indeed, Plaintiff has failed to identify any cognizable harm caused by interclick's alleged practices to herself or to anyone else.  Accordingly, CAFA does not provide a basis for the Court to retain jurisdiction over Plaintiff's state law claims.  In the alternative, if the Court were to retain jurisdiction over Plaintiff's state law claims, they too should be dismissed because Plaintiff pleads no cognizable injury and fails to allege facts sufficient to state a cognizable claim under any theory for the reasons set forth below.

## ALLEGATIONS OF THE AMENDED COMPLAINT

The following allegations are pleaded in the Amended Complaint.  To the extent they plead alleged facts, as opposed to mere conclusions or labels, these allegations are taken as true solely for purposes of this motion to dismiss.

## Internet Advertising and Ad Networks

Many websites display third-party advertisements. (Amended Complaint ("Am. Complt.") ¶¶ 23-25.) The publishers of websites sell advertising display space on those sites directly to advertisers or to intermediaries who operate "ad networks." (Am. Complt. ¶¶ 24-25.) interclick operates one such ad network. (Am. Complt. ¶¶ 8, 24.)

When a computer user "visits" a website that has sold display space to an ad network operator, the website "causes" the user's browser "to communicate with the ad network's systems," which then display an advertisement that appears on the website page. (Am. Complt. ¶ 23.) The ad network operator's object is to display an advertisement of interest to the computer user, potentially taking into account websites previously visited by the computer user. (Am. Complt. ¶ 30.)

Interclick's "ad network" consists of websites from which interclick has purchased advertisement display space. (Am. Complt. ¶ 24.) Interclick's clients are advertisers and ad agencies that pay interclick fees for displaying their advertisements on the websites that make up this ad network. (Am. Complt. ¶¶ 21, 24.)

## Browser Cookies

Many "online, third-party services" utilize "browser cookies," which are text files, to gather information about computer user Internet habits. (Am. Complt. ¶ 30.) Plaintiff identifies a number of salient features of browser cookies:

- Third-parties deposit browser cookies on the Internet browsers of users' computers;

- Browser cookies contain unique identifiers, and while the cookies reside on a computer user's browser they are used to associate "browsing history information" with a particular computer;

- The third-parties that deposit the browser cookies can access the cookies and the "browsing history information" associated with those cookies;

- Ad networks, like interclick, use the browsing history information they collect from browser cookies to create "behavioral profiles" for particular computers; and

- When a computer that an ad agency has profiled using browser cookies visits a Web page on which the ad network serves advertisements, the computer systems of the ad agency use the profile to select particular categories of advertisements to be displayed to that computer.

(Am. Complt. ¶ 30.)

**<u>Flash Cookies</u>**

The Amended Complaint alleges that interclick used "flash cookies" (also known as local shared objects or "LSOs") "as a substitute and back-up for browser cookies." (Am. Complt. ¶ 39.) Plaintiff alleges that when interclick placed a standard browser cookie on a user's computer, it would also place an identical flash cookie. (Am. Complt. ¶ 40.) If "the user deleted the browser cookies, the LSO [or flash cookie] would be used to 're-spawn' the browser cookie" without notice to the user and without the user's consent. (*Id*.)

Plaintiff alleges that flash cookies "*may be*" larger than browser cookies (Am. Complt. ¶ 88), but does (and cannot) allege that the size of the flash cookie she allegedly found on her computer could have impaired the functioning of her computer.

**<u>"Browser Sniffing"</u>**

According to Plaintiff, interclick engaged in a practice that she refers to as "browser sniffing" or "history sniffing" "to determine whether a consumer had previously visited certain web pages." (Am. Complt. ¶ 47.) Plaintiff does not allege that "browser sniffing" involved

6

installing any cookie or code on her computer.  Instead, Plaintiff alleges: "(a) in its code to display an advertisement to a consumer, Interclick embedded history-sniffing code invisible to the consumer; (b) the history-sniffing code contained a list of Web page hyperlinks; (c) although the hyperlinks were not displayed to the consumer, the consumer's browser automatically assigned each link a color designation based on whether the user had previously visited the Web page associated with the link; (d) the history-sniffing code performed an examination of the list of color-designated hyperlinks; (e) the history-sniffing code transmitted the results of this examination to Interclick's servers."  (Am. Complt. ¶ 48.)  Plaintiff claims that this alleged "browser sniffing" was used by interclick's computers in "selecting an advertisement" to display. (Am. Complt. ¶ 47.)

**Plaintiff's "Experience" With Flash Cookies and "Browser Sniffing"**

In moving to dismiss the original Complaint, interclick demonstrated that Plaintiff failed to include factual allegations about her experience demonstrating that she can state a claim. While the Amended Complaint, like the original Complaint, includes a section entitled "Plaintiff's Experience and Class Consequences" (¶¶ 76-87), the allegations about Plaintiff and her "experience" with interclick's alleged tracking technology remain minimal and speculative, and confirm that Plaintiff does not know whether *her* computer was even subject to "browser sniffing" or what function, if any, a flash cookie performed on *her* computer.  Not surprisingly, Plaintiff again fails to plead any facts showing any cognizable injury to herself or her computer.

Plaintiff alleges that "[o]n or about late October 2010," she examined the contents of her computer and discovered an LSO (or "flash cookie") allegedly "set by interclick.com."  (Am. Complt. ¶ 77.)  Plaintiff alleges her "belief" that the flash cookie was part of interclick's tracking technology.  (Am. Complt. ¶ 78.)  Plaintiff does not allege whether the alleged flash cookie

"respawned" a browser cookie on her computer.  Plaintiff does not allege how the alleged flash cookie in any way interfered with or damaged her computer (nor could she).

Plaintiff's allegations regarding "browser sniffing" are similarly speculative.  The Amended Complaint alleges that "[b]ased on reports of Interclick's browser-history sniffing activities, Interclick's role as a major online ad network, and the presence of an interclick.com LSO on her computer, Plaintiff *believes* her web-browsing has been the [sic] subjected to Interclick's browser-history sniffing."  (Am. Complt. ¶ 85) (emphasis added).  Plaintiff does not allege that the "browser sniffing" (which she "believes" occurred) in any way interfered with or damaged her computer (nor could she).

Plaintiff vaguely alleges that certain unidentified "consumers" (not specifically Plaintiff) "whose Internet service providers impose a bandwidth cap or 'bit cap' or download quota" may have suffered "diminished performance during Defendants' communications" or "the unavailability of services, or diminished availability of services, because of the services unexpectedly and unauthorizedly used by Defendants."  (Am. Complt. ¶ 116.)  Plaintiff does not allege that she herself suffered diminished performance or any unavailability of services or diminished availability of services, nor does she allege any facts explaining how the flash cookie she allegedly found on her computer could have plausibly caused any such disruption of services.

## ARGUMENT

## <u>MOTION TO DISMISS STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Facial plausibility" means that the plaintiff's factual pleadings "allow[] the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Even a complaint that pleads facts that are "merely consistent with" a defendant's liability is not plausible. *Id*.

Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations. *Twombly*, 550 U.S. at 555 (holding that "courts are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted). "'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Nomination Di Antonio E Paolo Gensini, S.N.C. v. H.E.R. Accessories Ltd.*, No. 07 Civ. 6959 (DAB), 2010 WL 4968072, at *2 (S.D.N.Y. Dec. 6, 2010) (Batts, J.) (quoting *Twombly*, 550 U.S. at 555).  Thus, a court will not draw inferences favorable to a plaintiff based on allegations without "factual content" and will dismiss under Rule 12(b)(6) a claim premised on conclusory allegations. *Id*. at *6 (citing *Iqbal*, 129 S. Ct. at 1949).

### POINT I

### PLAINTIFF FAILS TO ALLEGE A VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT.

As in *DoubleClick*, Plaintiff fails to state a claim under the CFAA because the Amended Complaint does not and cannot adequately allege facts satisfying the statutory requirement to plead $5,000 in real economic damages from a single act.  Plaintiff's allegations of damage consist of mere labels and the formulaic recitation of statutory language, and thus fail to state a plausible basis for relief. *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1950.

The CFAA allows for a limited private right of action under specified circumstances.  18 U.S.C. § 1030(g).  As in *DoubleClick*, the sole provision of the CFAA (18 U.S.C. § 1030(a)(5)) invoked in the Complaint (Am. Complt. ¶ 142) is actionable only if a violation has caused "loss

to one or more persons during any one-year period … aggregating at least $5,000 in value."  18

U.S.C. § 1030(c)(4)(A)(i)(I).  *See Register.com. Inc. v. Verio, Inc.*, 356 F.3d 393, 440 (2d Cir.

2004) (holding that "any civil action under CFAA involving 'damage or loss' ... must satisfy the

$5,000 threshold" and reversing injunction based on the CFAA as record failed to demonstrate

sufficient basis for claim of $5,000 in "*actual* damages or loss as a result of an alleged CFAA

violation") (emphasis in original).  Such damages "are limited to economic damages."  18 U.S.C.

§ 1030(g); *Register.com, Inc.*, 356 F.3d at 440.

**A.**     **Plaintiff Fails To Allege The Requisite $5,000 In Actual Damages.**

Plaintiff fails to plead facts alleging that she sustained *any* real economic damages, let

alone damages aggregating at least $5,000.  The damage allegations of the First Claim for Relief

(¶¶ 144-51) all merely parrot the words of the statute, contain purely conclusory allegations, or

reference "damages" not cognizable under the CFAA.  None of these paragraphs contains any

allegation of *fact* establishing a plausible claim for $5,000 in cognizable damages.   Under

*Twombly* and *Iqbal*, mere labels and conclusions and "a formulaic recitation of the elements of a

cause of action will not do."  *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1950.

Plaintiff's repetition of statutory language defining "impairment," "damage" and "loss,"

without stating any facts identifying any such harm to her computer, (Am. Complt. ¶¶ 145-47), is

precisely the mere "formulaic recitation" rejected by *Twombly* and *Iqbal*.  *Twombly*, 550 U.S. at

555; *Iqbal*, 129 S. Ct. at 1950.  *See, e.g.*, *Océ North America, Inc. v. MCS Services, Inc.*, No.

WMN-10-CV-984, 2010 WL 3703277, at *5 (D. Md. Sept. 16, 2010) (granting Rule 12(b)(6)

motion to dismiss CFAA claim because "Plaintiff's allegation that 'it has suffered impairment to

the integrity or availability of its data, programs, systems, and information resulting in losses or

damages in excess of $5000 during a one year period' is merely a conclusory statement and thus

does not sufficiently plead the $5000 minimum damages requirement to bring a suit under the

CFAA"); *Worldspan, L.P. v. Orbitz, LLC*, No. 05-C-5386, 2006 WL 1069128, at *5 (N.D. Ill. April 19, 2006) (dismissing CFAA claim where complaint "merely parrot[ed] the 'causing damage' text of the CFAA in conclusory fashion and fail[ed] to allege any facts indicating that the completeness, usability, or availability of [Plaintiff's] data was impaired").

Plaintiff's allegation that flash cookies, "unlike browser cookies which are four kilobytes… *may be* up to 100 kilobytes in size" and that somehow interclick's alleged activities may have caused certain "consumers … diminished performance … [and] the unavailability of services or diminished availability of services" is also critically lacking.  (Am. Complt. ¶¶ 88, 116) (emphasis added).  Plaintiff never alleges the size of the flash cookie she allegedly found on her computer, or that this flash cookie, or anything else that she speculates interclick did in regard to her computer, caused her any "diminished performance" or interrupted any service on her computer.  Indeed, such allegations would be utterly implausible.  A file that contains 100 kilobytes of information would occupy approximately 0.00006% of the hard drive space on a modest 160 gigabyte hard drive (i.e., *less than six one hundred-thousandths of a percent*).  Further, even if interclick's alleged flash cookie did take up some tiny portion of the capacity of her computer, this in-and-of-itself is insufficient to state a claim under the CFAA.  All electronic devices have a maximum capacity, but the mere unauthorized use of a portion of that capacity does not constitute loss under the CFAA absent factual allegations that this utilization actually caused damage to the electronic device or a slowdown or shutdown of the device.  *Czech*, 674 F. Supp. 2d at 1117-18.  Otherwise, for example, every unauthorized text message received by a cellphone user would constitute damage under the CFAA, something clearly not contemplated under the statute.  *Id.* at 1117.

11

Plaintiff also summarily asserts that she and putative class members have suffered "violation of the right of privacy, and disclosure of personal information that is otherwise private, confidential, and not of public record." (Am. Complt. ¶ 148.) By this Plaintiff appears to refer to information regarding Internet browsing habits and does not, and cannot, mean personally identifying information, such as her address or telephone number. Plaintiff attempts to buttress this claim with a series of conclusory allegations that the "personal information" supposedly collected by interclick somehow has value to computer users. (Am. Complt. ¶¶ 94-102.) Plaintiff does not cite any section of the statute supporting such a claim for "personal information" as a form of cognizable loss under the CFAA. Nor could she, as loss of privacy and the supposed "economic value" of information about the Web habits of a user do not constitute real economic damage under the CFAA. As Judge Buchwald found in *DoubleClick* in dismissing the CFAA claim:

> A person who chooses to visit a Web page and is confronted by a targeted advertisement is no more deprived of his attention's economic value than are his offline peers. Similarly, although demographic information is valued highly . . ., the value of its collection has never been considered an economic loss to the subject. Demographic information is constantly collected on all consumers by marketers, mail-order catalogues and retailers.

*DoubleClick*, 154 F. Supp. 2d at 524; *see also AtPac v. Aptitude Solutions*, 730 F. Supp. 2d 1174, 1184-85 (E.D. Cal. 2010) (granting Rule 12(b)(6) motion to dismiss CFAA claim, noting that "courts interpreting the definition of 'loss' [under the CFAA] sufficient to bring a civil action have done so narrowly").

In addition to this legal bar requiring dismissal here as in *DoubleClick*, Plaintiff's claim fails because she makes no factual allegations whatsoever that she could have sold information about her computer's Web browsing allegedly collected by interclick (and, of course, Plaintiff makes no factual allegation concerning what was actually collected from her computer, if

anything, by interclick).  Further, even if she could have sold any such information, nothing interclick allegedly did would have deprived her of that opportunity.  Plaintiff references statements by alleged Internet advertiser organizations that user information is useful to Internet advertisers because it better allows advertisers to *provide a benefit to users* (*i.e.*, Plaintiff) by supplying them ads better suited to users' interests.  (Am. Complt. at p. 18, n. 2.)  Plaintiff references three websites that supposedly provide "value" to computer users for their personal information — *allow.com (UK)*, *personal.com*, and *selectout.org* — but none of these websites offer money to consumers for their personal information (much less their Web browsing histories).  (Am. Complt. ¶ 99.)  Courts have rejected the notion that an individual's personal information had economic value absent factual allegations "that an individual['s] personal information has or had any compensable value in the economy at large." *In re JetBlue Airways Corp. Privacy Litig.* ("*JetBlue*"), 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (holding that acquisition of "personal information" about computer user could not form basis of a breach of contract claim where there was a failure to establish that the information "had any compensable value in the economy at large").

Moreover, even if there was a market for Plaintiff to sell such information, nothing interclick is alleged to have done *deprived* Plaintiff of the ability to "sell" her "personal information" to anyone who would pay for it.  Insofar as any of the three websites referred to by Plaintiff offer the opportunity for any reward as an inducement for Plaintiff to share her personal information with them, Plaintiff would not lose that supposed opportunity because of "tracking" performed by an Internet advertising company.

Further, Plaintiff makes no factual allegations that interclick actually did collect "personal information" from her or what such information comprised.  Devoid of factual

allegations, this assertion also cannot sustain a claim under the CFAA.  *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1950.

**B.    Plaintiff May Not Aggregate "Damages" From Alleged Acts Against Unnamed Putative Class Members To Satisfy The Statutory Requirement For $5,000 In Actual Damages.**

Because Plaintiff alleges no cognizable losses *she* has suffered, much less $5,000 in losses, the Amended Complaint invokes the provision of the CFAA referring to aggregating damages to more than one person during a one-year period.  (Am. Complt. ¶ 150.)  However, this provision cannot save Plaintiff's pleading.  First, economic damages under the CFAA "may only be aggregated across victims and over time for a *single* act."  *DoubleClick*, 154 F. Supp. 2d at 523 (emphasis added).  Plaintiff acknowledges this statutory requirement, as she makes the conclusory allegation that all of the alleged acts and omissions set forth in the Complaint "constituted a single act."  (Am. Complt. ¶ 150.)  Not surprisingly, Plaintiff pleads no facts that make remotely plausible her sweeping claim that all of the deployment of either of the alleged tracking technologies alluded to in the Amended Complaint, involving different websites and allegedly millions of different computer users, can somehow constitute a "single act."  Plaintiff's conception of a "single act" encompasses such disparate and separate phenomena that it has no analytical meaning whatsoever.  Indeed, in *DoubleClick*, Judge Buchwald specifically held that DoubleClick's placing and accessing of tracking software on different computers could not be considered a "single act" for purposes of meeting the statutory $5,000 damages threshold.  154 F. Supp. 2d at 524.  That holding is dispositive here.

Second, at this point, prior to class certification (and a class could never be certified here, for numerous reasons), Plaintiff is the only plaintiff in this action and has no standing whatsoever to assert anyone's damages other than her own.  *Thurmond v. Compaq Comp. Corp.*, 171 F. Supp. 2d 667, 680 (E.D. Tex. 2001) (plaintiff cannot rely upon damages allegedly suffered by

absent putative class members to satisfy the CFAA $5,000 threshold).   Instead, Plaintiff must establish that she herself meets the required threshold.  *See W.R. Huff Asset Mgt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.6 (2nd Cir. 2008)  ("[D]istrict courts should be mindful that *named* plaintiffs in a class action must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.  Unless [they] can thus demonstrate the requisite case or controversy between themselves personally and [defendants], none may seek relief on behalf of himself or any other member of the class.") (internal quotation marks and citations omitted) (emphasis in original).  Plaintiff only makes the conclusory allegation that the alleged conduct "resulted in an aggregated loss to Plaintiff and the Class of at least $5,000 within a one-year period."  (Am. Complt. ¶ 150.)  Accordingly, whether unidentified individuals absent from the Court could allege economic damage (and Plaintiff makes no plausible allegation that they could) has no bearing on the sufficiency of Plaintiff's damages allegations.

Third, even if the alleged "damage" of absent putative class members somehow could satisfy the statutory requirements of the CFAA (and it cannot), Plaintiff's allegations of damage merely recite the elements of a claim, and thus cannot satisfy the *Twombly* and *Iqbal* standard. (Am. Complt. ¶ 150.)  No plausible real economic damage is alleged.

Accordingly, for all of these reasons, Plaintiff's CFAA claim should be dismissed.

## POINT II

### THE COURT SHOULD DISMISS PLAINTIFF'S STATE LAW CLAIMS FOR LACK OF JURISDICTION.

As interclick demonstrated in its initial motion, if the Court dismisses the CFAA claim, the Court should not exercise supplemental jurisdiction over the state law claims in the Amended Complaint.  28 U.S.C. § 1367(c)(3).  *See DoubleClick*, 154 F. Supp. 2d at 526 (declining to

exercise supplemental jurisdiction over state law claims).  "[W]hen the federal law claims have dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of jurisdiction…."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Implicitly recognizing that dismissal of her sole remaining federal claim should lead to dismissal of her state law claims, Plaintiff adds diversity jurisdiction under CAFA as an alternative basis for federal jurisdiction in her Amended Complaint.  However, among CAFA's requirements for federal jurisdiction over a putative class action (where federal question jurisdiction is not available) is "an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs." *Blockbuster v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2008) (citing 28 U.S.C. § 1332(d)(2), (6)).  The party invoking jurisdiction bears the burden of establishing that there is a "reasonable probability" that the aggregate claims of the putative class exceed $5,000,000.  *Id.* at 58.  Here, Plaintiff completely fails to meet this burden.  As shown above, nothing in the Amended Complaint sufficiently avers that interclick's alleged use of "flash cookies" or "browser sniffing" harmed the computer of any putative class member.  As discussed (Point I, *supra*), Plaintiff alleges that interclick may have acquired information about the browsing habits of users, but alleges no facts establishing that alleged class members were deprived by interclick of an opportunity to sell such information, much less that class members would have sold such information for more than five million dollars.  Absent such allegations, the acquisition of "personal information" about a computer user cannot provide the basis for a

16

state law claim.  *JetBlue*, 379 F. Supp. 2d at 327.  Thus, CAFA does not provide a basis for federal jurisdiction, and the Court should dismiss Plaintiff's state law claims.[2]

## POINT III

### PLAINTIFF FAILS TO ALLEGE
### ANY NEW YORK STATE LAW CLAIM.

Even if the Court were to exercise supplemental jurisdiction or jurisdiction under CAFA (and it should not, as discussed in Point II above), the various state law claims in the Amended Complaint are deficient and should be dismissed for the following reasons.

**A.      Plaintiff Fails to State A Claim Under N.Y. General Business Law Section 349.**

New York General Business Law Section 349 provides, in relevant part, that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. G.B.L. § 349(a).  To state a claim under Section 349, Plaintiff must allege facts supporting a claim (1) that the act or practice was consumer-oriented; (2) that the act or practice was misleading in a material respect; and (3) that the consumer suffered injury as a result of the deceptive act or practice.  *See, e.g.*, *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000).  Plaintiff's conclusory allegations fail to satisfy at least the second and third elements.

As to the second element, Plaintiff fails to allege actionable misleading conduct on the part of interclick.  Section 349 requires that "[w]hether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Stutman*, 95 N.Y.2d at 29 (quoting *Oswego Laborers' Local 214 Pension Fund*

---

[2]  Plaintiff's claim under New York General Business Law Section 349 could not in any event support diversity jurisdiction under CAFA for the additional reason that it is brought only on behalf of a New York sub-class (Am. Complt. Second Claim for Relief) and interclick maintains its principal place of business in New York (Am. Complt. ¶ 8), and thus the Court would be required to decline to exercise CAFA jurisdiction under 28 U.S.C. § 1332(d)(4).

*v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).   A "'deceptive act[] or practice[]' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer." *Goshen v. Mutual Life Ins. Co.*, 98 N.Y.2d 314, 325 (2002); *see also Solomon v. Bell Atlantic Corp.*, 9 A.D.3d 49, 51, 777 N.Y.S.2d 50, 52 (1st Dep't 2004) (Section 349 requires that "defendant made misrepresentations or omissions").

Plaintiff fails to identify any misleading representation or omission *by* interclick *to* Plaintiff, as required under Section 349.   Plaintiff alleges only acts by interclick of which Plaintiff was completely unaware while they were occurring, and thus could not have deceived her or caused her to do anything.   (Am. Complt. ¶ 157.)   Indeed, Plaintiff does not even allege that she was aware of interclick at the time of the alleged conduct or that she was misled into entering into any consumer transaction.

Plaintiff also fails to satisfy the third element of Section 349 because she has not pleaded injury "by reason of" any alleged deception nor cognizable "actual damages."   N.Y. G.B.L. § 349(h).   First, Plaintiff does not adequately allege any facts demonstrating interclick made any representations or omissions that caused her harm.   *See, e.g.*, *Oswego Laborers'*, 85 N.Y.2d at 26 (causation of harm required); *Solomon*, 9 A.D.3d at 51, 777 N.Y.S.2d at 52 (Section 349 requires "that the plaintiff was deceived by those misrepresentations or omissions and that as a result the plaintiff suffered injury").   In *Gale v. International Business Machines Corp.*, 9 A.D.3d 446, 447, 781 N.Y.S.2d 45, 47 (2d Dep't 2004), for example, the Appellate Division held that the plaintiff had failed to state a GBL Section 349 claim because he had failed to allege that he had seen any of the alleged deceptive statements made by the defendant.   Similarly, here, Plaintiff identifies no deceptive statement or omission by interclick that *caused* Plaintiff any injury. Plaintiff's alleged harm did not flow from any statement or omission by interclick directed at

Plaintiff, but instead whatever harm Plaintiff theoretically could have suffered resulted from acts of which she was completely unaware.

Second, as discussed above, Plaintiff alleges no "actual" harm as result of any alleged deceptive act. *Stutman*, 95 N.Y.2d at 29 (GBL § 349 requires showing of "actual" harm). As with her CFAA claim, Plaintiff's conclusory allegations (Am. Complt. ¶¶ 158-59) fail to plead *facts* demonstrating any cognizable actual harm. Indeed, Plaintiff does not even know whether she was subject to "respawning" of browser cookies or "browser sniffing." Thus, she cannot possibly plead any resulting injury and actual damages.

**B.    Plaintiff Fails To Allege A Claim For Trespass to Personal Property/Chattels.**

To state a claim for trespass to chattels (or personal property) under New York law, Plaintiff must plead facts plausibly showing that interclick "'intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in [Plaintiff's] possession,' and that [Plaintiff was] thereby harmed." *JetBlue*, 379 F. Supp. 2d at 327 (quoting *School of Visual Arts v. Kuprewicz*, 3 Misc. 3d 278, 771 N.Y.S.2d 804, 807 (N.Y. Sup. Ct. 2003)); *see also Register.com, Inc.*, 356 F.3d at 404 ("A trespass to a chattel may be committed by intentionally … using or intermeddling with a chattel in the possession of another, where the chattel is impaired as to its condition, quality or value.") (citation omitted).

"Under New York law, liability only obtains on this cause of action if a defendant causes harm to 'the [owner's] materially valuable interest in the physical condition, quality, or value of the chattel, or if the [owner] is deprived of the use of the chattel for a substantial time.'" *JetBlue*, 379 F. Supp. 2d at 328 (quoting *School of Visual Arts,* 3 Misc. 3d at 281, 771 N.Y.S.2d at 807-08) (quoting Restatement (Second) of Torts § 218, com. e (1965)). Conclusory or generic allegations of harm are insufficient to state a claim. *Id.*; *see also Intel Corp. v. Hamadi*, 30 Cal. 4th 1342 (2003) (holding that tort of trespass to chattels did not encompass electronic

communications that neither damaged the recipient computer system nor substantially impaired its functioning); *Hecht v. Components Int'l, Inc.*, 22 Misc. 3d 360, 370, 867 N.Y.S.2d 889, 899 (Sup. Ct. Nassau County 2008) ("Interference with information stored on a computer may give rise to trespass to chattel if plaintiff is dispossessed of the information or the information is impaired as to its condition, quality or value," but "[h]armless intermeddling with a chattel is not actionable" under New York law.).

Plaintiff makes only conclusory claims that interclick's alleged trespass interfered with computers.  (Am. Complt. ¶¶ 168-70.)  Plaintiff again pleads labels, but alleges no facts showing injury to her computer or dispossession of her computer.  To the contrary, Plaintiff's few specific allegations demonstrate that any damages claim is implausible.  Plaintiff alleges only that she found a flash cookie allegedly set by interlick.com when she examined her computer.  (Am. Complt. ¶ 77.)  There is no allegation, nor could there be, that this alleged flash cookie harmed her computer, substantially impaired its functioning or dispossessed her of its use.  Plaintiff alleges that flash cookies may be larger than browser cookies (Am. Complt. ¶ 88), but does not allege the size of the flash cookie she claims to have found on her computer or allege any facts suggesting that the size of the flash cookie plausibly could have harmed her computer or impaired its use.

As for "browser sniffing," Plaintiff does not even know if she was subject to the alleged practice.  The Amended Complaint does not allege any facts concerning the performance of her computer that she could attribute to the "browser sniffing" she believes may have occurred.  None of the allegations of the Amended Complaint establish that Plaintiff's use of her computer was impaired or that her computer was harmed.  Indeed, "browser sniffing" by definition could

cause no harm to a computer.   At most, its only result was to impact the selection of advertisements displayed to a user's computer.

Accordingly, Plaintiff's claim for trespass should be dismissed.   *See, e.g.*, *Elektra Entertainment Group, Inc. v. Santangelo*, No. 06 Civ. 11520, 2008 WL 4452393, at *7 (S.D.N.Y. Oct. 1, 2008) (dismissing trespass to chattels claim based on alleged unauthorized access to computer because, in part, plaintiff failed adequately to allege "actual injury either in the form of 'harm to the condition, quality or material value' of the computer, … or that they were deprived of the use of the computer for a substantial period of time"); *JetBlue*, 379 F. Supp. 2d at 328-29 (dismissing because "plaintiffs have not established that they suffered the type of harm that may be redressed through a claim for trespass to chattels" where "plaintiffs allege rather generically that they have suffered 'actual damages,'" "an irreparable injury for which there is no adequate remedy at law" and "harm to their privacy interests" and do not "allege any facts that could sustain … a showing" of the type of harm required).

Plaintiff also appears to allege that she had a property right in her "personal information" and that interclick dispossessed her of this property.   (Am. Complt. ¶¶ 167, 169.)   Assuming, *arguendo*, that the tort of trespass even theoretically applies to personal information, Plaintiff pleads no facts as to what, if any, personal information was acquired about her by interclick, nor does she allege any facts (because she cannot) demonstrating that she was deprived of any "use" of her "personal information" by interclick.   Accordingly, Plaintiff's allegations regarding "personal information" cannot support a claim for trespass under New York law.   *JetBlue*, 379 F. Supp. 2d at 328-29 ("The only type of harm plaintiffs allege … is harm to their privacy interests, and even if their privacy interests were indeed infringed by the data transfer, such a harm does not amount to a diminution of the quality or value of a materially valuable interest in their

personal information … [and] Plaintiffs also have not been deprived of the use of their personal information at any point, let alone for a substantial period of time," as required to sustain a claim for trespass).

**C.  Plaintiff Fails To Allege A Claim For Breach Of Implied Contract.**

To recover under a breach of implied contract theory, Plaintiff must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation, and (4) the reasonable value of the services."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d 168, 175 (2d Cir. 2005) (internal quotation marks and citation omitted) (also holding that implied-in law and unjust enrichment are merely different labels for the same essential claim).[3]  Plaintiff has not alleged facts remotely establishing an implied-in-law or quasi-contract between herself and interclick. There was no performance of services by Plaintiff to interclick, or an acceptance of services by interclick, or expectation of compensation on the part of Plaintiff.

The Amended Complaint alleges tort-like behavior, to which the concept of an implied-in-law or quasi-contract is inapplicable.   A quasi-contract claim requires proof of a legally cognizable *relationship* between the parties.  *See JetBlue*, 379 F. Supp. 2d at 329 (dismissing unjust enrichment claim against defendants as to whom plaintiffs "do not allege any facts to support a finding of 'direct dealings or an actual, substantive relationship'" with plaintiffs). Here, there was nothing that resembles "direct dealings or an actual, substantive relationship" between Plaintiff and interclick.

In addition, Plaintiff fails to allege facts establishing that information that interclick allegedly may have collected through the use of "browser sniffing" and flash cookies had

---

[3]  Apparently in recognition of this legal principle Plaintiff dropped her duplicative claim for unjust enrichment from her Amended Complaint.

economic value sufficient to support a claim for unjust enrichment.  As discussed above (Point I, *supra*), nothing that interclick is alleged to have done deprived Plaintiff of any opportunity Plaintiff might have to derive value from her "personal information."  In *DoubleClick*, the court held that the uncompensated loss of "demographic information" collected by browser cookies cannot constitute "unjust enrichment to collectors."  154 F. Supp. 2d at 525.[4]  Nothing in Plaintiff's Amended Complaint suggests that the information supposedly collected was more extensive or somehow more valuable to Plaintiff than the information at issue in *DoubleClick*. Also, in *JetBlue*, the court rejected the notion that an individual's personal information had economic value absent factual allegations "that an individual['s] personal information has or had any compensable value in the economy at large."  379 F. Supp. 2d at 327.

Accordingly, Plaintiff fails to state a claim for implied contract.

**D.    Plaintiff Fails To Allege A Claim For Tortious Interference With Contract.**

To state a claim for tortious interference with contract, Plaintiff must allege facts establishing "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach and (4) damages."  *Foster v. Churchill*, 87 N.Y.2d 744, 749-50 (1996).  Plaintiff's vague and conclusory allegations do not satisfy these required elements.  Plaintiff does not allege (1) the existence of any particular contract between herself and any identified third party, or the terms of any particular contract; (2) any facts demonstrating interclick's knowledge of any particular contract between Plaintiff and any identified third party; (3) any facts regarding the breach of any particular contract with any identified third party and interclick's intentional procurement of

---

[4]   The alleged "demographic information" at issue in *DoubleClick* included personal information that went well beyond anything that Plaintiff alleges in this case, including names, e-mail addresses, home and business addresses and telephone numbers.  154 F. Supp. 2d at 503.

the breach; and (4) any identified damages stemming from the breach of any particular contract with any identified third party.  Instead, Plaintiff merely lists the elements of a cause of action for tortious interference.  (Am. Complt. ¶ 196.)  Plaintiff does not even attempt to plead facts supporting this cause of action, and her vague and conclusory allegations merely allege purely unilateral acts by interclick, and not the breach of contractual obligations to Plaintiff by any identified third party.

## **CONCLUSION**

For the foregoing reasons, defendant interclick, Inc. respectfully requests that the Court grant its Motion to Dismiss the Amended Complaint with prejudice and that the Court grant such other and further relief for interclick as the Court deems just and proper.

Dated:  New York, New York
        April 18, 2011

**RICHARD AND RICHARD, P.A.**          **GREENBERG TRAURIG, LLP**

                                       By:    /S/ Stephen L. Saxl
                                              Stephen L. Saxl
Dennis A. Richard (*pro hac vice*)            William A. Wargo
Michael R. Tolley (*pro hac vice*)            200 Park Avenue
825 Brickell Bay Drive                        New York, New York 10166
Tower III, Suite 1748                         (212) 801-9200
Miami, Florida 33131                          (212) 801-6400 (fax)
(305) 374-6688                                saxls@gtlaw.com
(305) 374-0384 (fax)                          wargow@gtlaw.com
dennis@richardandrichard.com
michael@richardandrichard.com
                                              Ian C. Ballon (*pro hac vice*)
*Attorneys for Defendant interclick, Inc.*    GREENBERG TRAURIG, LLP
                                              2450 Colorado Avenue
                                              Suite 400E
                                              Santa Monica, CA 90404
                                              (310) 586-7700
                                              (310) 586-0575 (fax)
                                              ballon@gtlaw.com

                                              *Attorneys for Defendant interclick, Inc.*

24